UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CANYON CUSTOM HOME BUILDERS, INC., et al.,

Plaintiffs,

v.  Case No. 20-CV-1327

SOMERSET CONDOMINIUM ASSOCIATION, INC.,

Defendant.

---

DECISION AND ORDER

---

**1. Background**

Before the court is defendant Somerset Condominium Association, Inc.'s motion to dismiss the complaint filed by plaintiffs Canyon Custom Home Builders, Inc. and Sheri W. Greenberg. Because the matter is before the court on a motion to dismiss, the court accepts as true the allegations in the complaint.

According to the complaint, Canyon is an Illinois corporation that builds homes. (ECF No. 1, ¶ 1.) Greenberg is its secretary. (ECF No. 1, ¶ 2.) The Association controls properties in Lake Geneva, Wisconsin, including eight vacant lots that are at issue here. These eight vacant lots are currently owned by RC Somerset, LLC. Properties within the

Association are subject to certain rules, including what the plaintiffs identify as the 2012 Design Review Guidelines. (ECF No. 1, ¶¶ 46-47, 55.)

Canyon entered into a contract to purchase the lots from RC Somerset, and the right to purchase four of the lots was assigned to Greenberg. (ECF No. 1, ¶¶ 56-58.) The offer to purchase was contingent on Canyon obtaining the Association's approval of its plans to build certain structures on the lots. (ECF No. 1, ¶ 59.) Although there was much back-and-forth between Canyon and the Association, so far the Association has not approved Canyon's plans. (ECF No. 1, ¶¶ 60-80.)

The plaintiffs now allege that they do not actually need the Association's approval of their building plans and seek a declaratory judgment to that effect. (ECF No. 1, ¶¶ 81-86.) Alternatively, a breach of contract claim alleges that the Association has breached the Association's 2012 Design Review Guidelines. (ECF No. 1, ¶ 87-96.) Finally, the plaintiffs allege that the Association has tortiously interfered with the contract between the plaintiffs and RC Somerset. (ECF No. 1, ¶ 97-104.)

2. **Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

3. Analysis

   3.1. Justiciability

The Association argues that the plaintiffs' declaratory judgment claim fails to present a justiciable controversy and, therefore, fails to state a claim upon which relief may be granted. (ECF No. 7 at 4.)

As a preliminary matter, the court must address which law applies to the plaintiffs' claims. In their complaint the plaintiffs allege they "are entitled to a declaration, pursuant to Wis. Stat. §§ 841.01 and 806.04." (ECF No. 1, ¶ 86.) These statutes represent two distinct causes of action. Section 806.04 is Wisconsin's uniform declaratory judgments act, which has no applicability to this action. Even when federal jurisdiction is based on diversity of citizenship, the federal, not the state, declaratory judgment statute governs. *Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.*, No. 94 C 2579, 1995 U.S. Dist. LEXIS 3520, at *11-13 (N.D. Ill. Mar. 16, 1995); *Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 373 n.49 (D. Del. 2008). "An action for declaratory judgment is procedural in nature and purpose. A

federal court exercising diversity jurisdiction follows federal procedural rules and, thus, federal law determines the rules to apply to a request for declaratory judgment relief in a given case." *Munich Welding, Inc. v. Great Am. Ins.*, 415 F. Supp. 2d 571, 574 (W.D. Pa. 2006) (citing *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986)); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876, 879 (1950) ("The operation of the Declaratory Judgment Act is procedural only." (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937))); 12 Moore's Federal Practice - Civil § 57.04[2] (2020). Thus, whether the plaintiffs have a justiciable claim for declaratory judgment is determined by federal law. The plaintiffs' reliance on state law in their brief (ECF No. 13 at 2-6) is misplaced.

The plaintiffs' claim under Wis. Stat. § 841.01, however, is a matter of state substantive law and is distinct from the federal declaratory judgment action. Therefore, the court applies it in this diversity action. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). That statute provides, "Any person claiming an interest in real property may maintain an action against any person claiming a conflicting interest, and may demand a declaration of interests." Wis. Stat. § 841.01(1). However, the fact that the plaintiffs may pursue a substantive claim under Wis. Stat. § 841.01 does not change the fact that the federal declaratory judgment statute applies to this case.

A federal court has jurisdiction only over cases and controversies. U.S. Const. Art. III, sec. 2. This requirement applies equally to actions under the Declaratory

Judgment Act, 28 U.S.C. § 2201. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).

In the context of an action for declaratory judgment, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune*, 549 U.S. at 127 (quoting *Aetna*, 300 U.S. at 240-41). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna*, 300 U.S. at 241. "Federal courts may not issue advisory opinions." *Commonwealth Plaza Condo. Ass'n v. City of Chi.*, 693 F.3d 743, 747 (7th Cir. 2012).

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Maryland Cas. Co.*, 312 U.S. at 273. "[A] party seeking a declaratory judgment has the burden of

establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993).

Even if a definite and concrete dispute exists, only an "interested party" may bring an action for declaratory judgment. 28 U.S.C. § 2201(a); *Loc. 180 of Intern. Union, United Auto., Aircraft and Agr. Implement Workers of Am., AFL-CIO v. J. I. Case Co.*, 185 F. Supp. 130, 133 (E.D. Wis. 1960). In other words, only a person with standing may seek declaratory judgment. *See Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1342 (7th Cir. 1987). A plaintiff has standing for a declaratory judgment if it is in immediate danger of sustaining a direct injury as a result of the defendant's conduct. *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 437 (7th Cir. 1994) (quoting *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 242 (7th Cir. 1986)). "[T]he alleged harm must be actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Before purchasing land, a prospective purchaser naturally may seek certainty as to whether it can use the property as it intends. But certainty may be impossible without litigation, and the current owner of the property often, for various reasons, may not be in a position to assert the declaratory judgment claim of the prospective purchaser. In the absence of certainty, the prospective purchaser may walk away from the purchase (an outcome that harms both the prospective purchaser and the would-be

seller), or it may choose to proceed, risking injury to itself or others should the plans prove proscribed.

The Declaratory Judgment Act was enacted, in part, to provide a means for litigants to avoid this sort of Hobson's choice. *See Peick v. Pension Ben. Guar. Corp.*, 724 F.2d 1247, 1260 n.14 (7th Cir. 1983) ("The Declaratory Judgment Act was adopted to relieve litigants of the choice between acting illegally and causing harm to themselves or others, at least where there is a colorable claim for relief."). However, simply because it is pragmatic or prudent for a prospective purchaser to obtain a juridical adjudication does not mean the prospective purchaser has standing to do so. Surely a person who has a mere vague or speculative interest in perhaps making an offer to purchase a property would not have standing to litigate a question about limitations on developing the property. But, at the opposite end of the spectrum, actual ownership is not necessarily required for standing.

The injury the plaintiffs here seek to avoid by seeking a declaratory judgment—proscribed development of the lots—depends on the occurrence of two contingencies. First, the plaintiffs must purchase the lots. Second, the plaintiffs must develop the lots in a way that is prohibited or proscribed by the Guidelines. In the view of some scholars, the fact that the potential injury is "doubly contingent" suggests the plaintiffs have no standing. *See* Existence of Actual Controversy, 10B Fed. Prac. & Proc. Civ. § 2757

(4th ed.). But more important than the number of contingencies is the certainty that the contingencies will occur.

At a minimum, there must have been an expressed intention for the contingency to occur. *See Highsmith*, 18 F.3d at 436-37 (finding plaintiffs lacked standing to litigate a claim that a lease's termination provision was unlawful because plaintiffs had not terminated the leases early or even expressed an intention to do so); *Vickers v. Henry Cnty. Sav. & Loan Asso.*, 827 F.2d 228, 231 (7th Cir. 1987) (finding plaintiffs lacked standing to seek declaratory judgment regarding loan's personal guarantee because any injury depended on two hypothetical contingencies—the borrower's default and the lender attempting to enforce the personal guarantee).

Here, the plaintiffs have alleged that both contingencies are not merely hypothetical. Canyon (and Greenberg through assignment) have already contracted to purchase the lots. Only the uncertainty regarding the application of the Association's Guidelines stands in the way of completion of the sale. If the plaintiffs were to prevail in their declaratory judgment action, they would purchase the lots (and, based on Canyon's contract with RC Somerset, would appear to be obligated to do so).

The plaintiffs' plans for developing the lots are similarly concrete. Based on the allegations in the complaint, the plaintiffs have presented detailed plans for the development of the lots in a way that the Association apparently contends is not

permitted by the Guidelines. As such, the development of the lots in a way not permitted by the Guidelines is not merely hypothetical or conjectural.

Taken together, the plaintiffs have adequately alleged an interest sufficient to establish standing. Moreover, the plaintiffs have shown that a substantial controversy exists between the parties regarding the meaning and application of the Guidelines of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

### 3.2. Claim Under Wis. Stat. § 841.01

"Any person claiming an interest in real property may maintain an action against any person claiming a conflicting interest, and may demand a declaration of interests." Wis. Stat. § 841.01(1).

> "[I]nterest in real property" includes estates in, powers of appointment … over, present and future rights to, title to, and interests in real property, including, without limitation by enumeration, security interests and liens on land, easements, profits, rights of appointees under powers of appointment, rights under covenants running with the land, powers of termination, and homestead rights. The interest may be an interest that was formerly designated legal or equitable.

Wis. Stat. § 840.01.

"The vendee under a contract to purchase land is the equitable owner and is the 'owner' for many purposes." *Scheer v. Weis*, 13 Wis. 2d 408, 413, 108 N.W.2d 523, 526 (1961) (citing *Mueller v. Novelty Dye Works*, 273 Wis. 501, 78 N.W.2d 881 (1956)). In *Scheer* the court held that "the vendee is an owner for the purpose of applying for a building permit under the village ordinance." *Id.* In *Mueller*, the question was whether a

judgment could act as a lien on property when, prior to docketing the judgment, the judgment debtor had entered into a contract to sell the property, had accepted a down-payment, and the purchaser had taken possession of the property. The court held that "the vendee, at the time the agreement is entered into, becomes the owner of the land; his equitable interest is in the property. The vendor becomes trustee of the legal title for the vendee; his (vendor's) interest is in the purchase money, and he has a lien on the land as security for any unpaid balance of such money." *Mueller*, 273 Wis. at, 505, 78 N.W.2d at 883.

The court in *Mueller*, however, appears to have been discussing the equitable interest created not merely by a contract to purchase land but under a "land contract." The plaintiffs err in conflating a contract to purchase land with a "land contract." Under a land contract, the "vendee has full rights over the land from the date of the contract," whereas "the vendor merely 'has an interest in personalty equivalent to a mortgagee's interest.'" *Milwaukee v. Greenberg*, 163 Wis. 2d 28, 38, 471 N.W.2d 33, 36 (1991) (quoting *Mueller*, 273 Wis. at 506-07, 78 N.W.2d 881; *Estate of Fischer*, 22 Wis. 2d 637, 642, 126 N.W.2d 596 (1964)). "Even though the vendor holds legal title to the property … 'the vendee must be regarded as the real owner,'" and therefore it "is liable for taxes assessed on the property after taking possession under a land contract." *Id.* (quoting *Williamson v. Neeves*, 94 Wis. 656, 665, 69 N.W. 806 (1897)).

Other authority, including *Sheer*, *see also Golden Sands Dairy LLC v. Town of Saratoga*, 2018 WI 61, ¶30, 381 Wis. 2d 704, 723, 913 N.W.2d 118, 127, suggests that a contract to purchase land is an interest sufficient to pursue a permit regarding the use of that land. But this simply provides further support for the court's conclusion that the plaintiffs have an interest to pursue their declaratory judgment action under 28 U.S.C. § 2201. The plaintiffs have not established that a mere contract to purchase property is sufficient to bring an independent action under Wis. Stat. § 841.01 to resolve a question of whether a condominium association's rules limit the prospective buyer's plans for a property.

Therefore, the court will grant the defendants' motion to dismiss the plaintiffs' claim under Wis. Stat. § 841.01.

### 3.3. RC Somerset as a Required Party

The plaintiffs seek to resolve the question of whether the Association's 2012 Design Review Guidelines apply to eight vacant lots. Yet the current owner of those lots, RC Somerset, is not a party to this action. The Association contends, "It almost goes without saying that [RC Somerset] is an interested and necessary party in the litigation, as it is the present owner of the real property at issue and a party to the alleged purchase agreement that is the subject of this action." (ECF No. 7 at 10.)

Under Fed. R. Civ. P. 19(a)(1):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

RC Somerset's presence is not necessary to determine whether the plaintiffs' plans are lawful under the Guidelines or whether they are entitled to damages. Therefore, its absence does not preclude granting complete relief among the existing parties, and Rule 19(a)(1)(A) is inapplicable.

However, as the owner of the real property at issue, RC Somerset undoubtedly has "an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). Although the plaintiffs and RC Somerset each seem to want the sale to proceed, there are ways in which their interests may not be aligned. *Cf. J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 653 (7th Cir. 2014) (finding employees were not required parties because their interests and those of their employer were identical); *see also Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (discussing factors relevant to assessing whether a party will adequately represent an absentee)

(citing *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)). For example, if the Association were to prevail on the merits, and it is declared that there are restrictions on how the lots may be developed, the value of the lots may decrease. Obviously, that disproportionately harms RC Somerset. Thus, the plaintiffs' interests might not be sufficient to protect RC Somerset's interests. *Cf. McDonald*, 760 F.3d at 653 (considering whether the absentee's interests will be adequately represented by a part).

But for nearly two years now the Association arguably has been making it difficult for RC Somerset to sell the lots by imposing what the plaintiffs argue are improper restrictions. The offer to purchase has been extended to account for the plaintiffs' failure to obtain the Association's approval, suggesting that RC Somerset is aware of the present dispute. Yet RC Somerset has not taken any action, suggesting that its absence from this lawsuit will not "as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1)(B)(i). The fact that RC Somerset has not taken any action in two years to protect its interests tends to suggest either that its interests are relatively minor or that it agrees with the Association. Either way, it has chosen not to join the plaintiffs in pursuing this lawsuit.

Thus, the court turns to Fed. R. Civ. P. 19(a)(1)(B)(ii), and whether RC Somerset's absence could somehow negatively impact the interests of the Association. If RC Somerset is not made a party to this action, claim preclusion would not bar it from later litigating its own claims against the Association. The plaintiffs acknowledge as much

when they note that "[a] decision for or against the Plaintiffs in this action should not preclude any unlikely subsequent action filed by RC Somerset." (ECF No. 13 at 9.) But they argue that this risk is not "substantial" because RC Somerset "appears disinclined to sue." (ECF No. 13 at 10.)

As noted above, the court agrees that RC Somerset appears disinclined to sue. But, regardless of RC Somerset's present subjective plans, the court must also consider successive owners of the property. If RC Somerset were a party, any claim by successive purchasers of the properties ordinarily would be barred under claim preclusion. But this concern is somewhat diminished because, in Wisconsin, claim preclusion does not necessarily bar new litigation with claims regarding which there was no reason to bring in an earlier suit. *See Kruckenberg v. Harvey*, 2005 WI 43, 279 Wis. 2d 520, 694 N.W.2d 879 (discussing application of claim preclusion to disputes involving real property). Moreover, RC Somerset's presence as a party is not required for issue preclusion to bar re-litigation of matters actually resolved including, for example, the application of the 2012 Design Review Guidelines to the subject lots. *See N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995) (discussing issue preclusion). Thus, the risk of the Association incurring multiple or inconsistent obligations, while not nil, is not substantial. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii); *see also N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1280 (10th Cir. 2012) (noting that a risk that is purely speculative is not substantial).

Therefore, RC Somerset is not a required party.

### 3.4. Breach of Contract

As an alternative to their claim for declaratory judgment the plaintiffs allege,

> The 2012 Design Review Guidelines is a contract requiring the Association to act in good faith and to deal fairly with Canyon and Sheri. The Association breached its duty of good faith and fair dealing by its arbitrary, capricious and unreasonable application of the 2012 Design Review Guidelines to Canyon's development proposals for Units 1-4 and Units 28-31.

(ECF No. 1, ¶ 95.) Setting aside questions of whether the Guidelines constitute a contract, the Association contends that the plaintiffs are not a party to the Guidelines. Nor, as merely a prospective purchaser of the properties, are they in privity.

In response, the plaintiffs argue that the Association is estopped from arguing that no contract exists between them because this argument "is vastly inconsistent with the Association's actions." (ECF No. 13 at 10.) The plaintiffs note that the Association engaged in various discussions regarding the plaintiffs' proposed development and "[a]t no point over the course of an entire year did the Association refuse to consider Canyon's proposals on the grounds that Canyon was not a titled owner of the Units." (ECF No. 13 at 11.) According to the plaintiffs, "[t]he Association demonstrated its assent to be bound by the contractual agreement between the Association and the Plaintiffs." (ECF No. 13 at 11.) But the Association's willingness to discuss the plaintiffs' proposed plan in no way somehow made the plaintiffs a party to the Guidelines, nor

was it inconsistent with the absence of a contractual relationship between the plaintiffs and the Association.

The plaintiffs alternatively argue that, by virtue of their contract to purchase, they possess an equitable interest in the properties sufficient to allege a breach of contract. (ECF No. 13 at 11-12.) While the equitable interest created by virtue of a contract to purchase real estate may be sufficient to assert certain legal rights, *see Golden Sands Dairy*, 2018 WI 61, ¶30, its contingent nature is insufficient to establish the privity necessary to allege a breach of contract.

Consequently, the court will grant the Association's motion to dismiss the plaintiffs' breach of contract claim.

### 3.5. Tortious Interference

Canyon's contract to purchase the properties from RC Somerset included a contingency whereby the Association's approval of the plaintiffs' plans was required. The plaintiffs allege that the Association tortiously interfered with Canyon's contract with RC Somerset in the following ways:

A. By requiring Canyon to submit its plans for building multiple-family structures on Units 1-4 and Units 28-31 for Committee and Board approval when the Association knew, or should have known, that neither the Committee nor the Board had the power or authority to require such approval.

B. By requiring Canyon to comply with 2012 Design Review Guidelines that the Association knew, or should have known, were not properly adopted by the Association and, therefore, represented an illegal, *ultra vires* exercise of authority.

C. By requiring Canyon to submit its plan for building multiple-family structures on Units 1-4 and Units 28-31 for Committee and Board approval when the Association knew, or should have known, that its 2012 Design Review Guidelines only applied to the construction of single-family units on Individual Grounds.

D. By pretending to have an interest in good faith discussions about the potential development of multiple-family structures on Units 1-4 and Units 28-31, while at the same time engaging in an arbitrary, capricious and unreasonable interpretation of the 2012 Design Review Guidelines as applied to Canyon's proposed development plans. The Association's denial of Canyon's construction proposals on the grounds that the proposals failed to comply with the 35-foot height requirement, the 2-1/2 story design limitation or with the architectural values of the Association was a pretext to conceal the Association's desire that Units 1-4 and Units 28-31 never be developed.

(ECF No. 1, ¶ 100.)

"The elements of a claim for tortious interference with a contract are: (1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the plaintiff's damages; and (5) the defendant was not justified or privileged to interfere." *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶14, 287 Wis. 2d 560, 574, 706 N.W.2d 667, 675 (citing *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994)).

The absence of the Association's approval has thwarted the plaintiffs' purchase of the properties only because Canyon chose to make the Association's approval a

contingency to its offer. The Association did not inject itself into the contractual relationship between Canyon and RC Somerset; Canyon chose to bring it in. As a consequence, the plaintiffs' claim fails at a fundamental level—having chosen to make the Association's approval a contingency of its offer, the plaintiffs cannot turn around and argue that the absence of the Association's approval tortiously interferes with their contract. To the extent the Association's actions could plausibly be regarded as interference, such actions were justified by virtue of the contingency. The plaintiffs can easily complete the purchase of the properties simply by removing the contingency from their offer.

That such contingencies are common in offers to purchase (ECF No. 13 at 12-13) does not mean that the tort of interference with contract is applicable. Condoning the plaintiffs' theory would open the door to chicanery, if not coercive schemes, whereby contracting parties could seek to compel action by a third-party under threat of a claim of tortious interference with contract simply by making the third-party's action a contingency of a contract.

The Association's motion to dismiss the plaintiffs' tortious interference claim will be granted.

**IT IS THEREFORE ORDERED** that Somerset Condominium Association, Inc.'s motion to dismiss (ECF No. 6) is granted in part. The plaintiffs' claims under Wis. Stat.

§ 841.01, for breach of contract, and for tortious interference are **dismissed**. The motion is denied in all other respects.

Dated at Milwaukee, Wisconsin this 26th day of February, 2021.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge