UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CANYON CUSTOM HOME BUILDERS, INC., et al.,

Plaintiffs,

v.  Case No. 20-CV-1327

SOMERSET CONDOMINIUM ASSOCIATION, INC.,

Defendant.

DECISION AND ORDER

**1. Procedural History**

Canyon Custom Home Builders, Inc. and Sheri W. Greenberg[1] seek to purchase and develop eight vacant lots that are part of the Somerset Condominium Association. Canyon, however, will not proceed unless it confirms the Association's rules do not bar its plans. Having failed to obtain the Association's approval of its plans, Canyon asks the court to declare that it does not need the Association's approval. (ECF No. 25.)

All parties have consented to this court in accordance with 28 U.S.C. 636(c). (ECF Nos. 10, 11.) The court has jurisdiction pursuant to 28 U.S.C. § 1332. The court previously found that Canyon presented a justiciable controversy and had standing to seek a

---

[1] For the sake of clarity, the court refers to the plaintiffs in the singular as Canyon.

declaratory judgment. *Canyon Custom Home Builders v. Somerset Condo. Ass'n*, No. 20-CV-1327, 2021 U.S. Dist. LEXIS 250821 (E.D. Wis. Feb. 26, 2021).

Canyon seeks summary judgment because, it argues, the Association does not have the authority to reject Canyon's plans. (ECF No. 36 at 1.) The briefing on this motion is complete, and the matter is ready for resolution.

**2. Facts**

Somerset was created in 1977 when the Developer, Lake Geneva Bath and Tennis Club, Inc., recorded a declaration. (ECF No. 47, ¶ 1.) In doing so, the Developer divided the property into units, which eventually totaled 37. (ECF No. 41, §§ 3, 9.) While most of the lots were designated for the development of single-family homes, the lots that Canyon seeks to develop—units 1-4 and 28-31—were designated for the development of multi-family buildings. (ECF No. 47, ¶¶ 4, 5, 10.)

The Declaration created an association comprised of all the unit owners. (ECF No. 39-1 at 20, § 6.01.) The Association was governed by and acted through a board. (ECF No. 39-1 at 20, §§ 6.01, 6.02.[2]) The Board was empowered to take various actions, including to create certain rules for the "maintenance, conservation and beautification" of the Condominium property and the "health, comfort, safety, and general welfare" of the Condominium property's occupants. (ECF No. 47, ¶¶ 14-15.)

---

[2] "Board" and "Association" were sometimes used interchangeably in the Declaration. (ECF No. 39-1 at 20, § 6.02.)

The Declaration included a provision requiring the Developer to approve new construction of undeveloped "Individual Grounds." (ECF No. 47, ¶ 20.) Although the Developer could assign this authority to the Board, it never did so. (ECF No. 47, ¶ 21.)

In 1997 the Association approved Design Review Guidelines and created a Design Review Committee. (ECF No. 47, ¶¶ 36-41; *see also* ECF No. 39-13 at 3.) Although the minutes of the meeting adopting the Guidelines reflect an intent to amend the Declaration to incorporate the Guidelines (ECF No. 47, ¶ 40), the Board did not follow the procedures necessary for amending the Declaration (which required approval of three-fourths of the unit owners, notice to all mortgagees, and recording with the county), and the Declaration was not actually amended. (ECF No. 47, ¶¶ 41-42.) The Guidelines were modified in 2006 (ECF No. 47, ¶¶ 43-45) and again in 2012 (ECF No. 47, ¶¶ 46-51), but again the Declaration was not amended to include the Guidelines (ECF No. 47, ¶ 47).

3. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*,

3

758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

4. Analysis

4.1. The Board's Authority

Canyon argues that the power to exercise architectural control over the development of condominium units is not and never has been a power of the Association under the Declaration. (ECF No. 37 at 13.) Rather, under § 14.13 of the Declaration only the Developer has the right to consider and approve proposals for the construction of structures in the condominium. (ECF No. 37 at 10.) Although the Declaration authorized the Developer to assign this authority to the Board, the Developer did not do so. (ECF No. 37 at 11.) And unlike Association powers, which the Developer maintained for a period of time before they automatically transferred to the Association, the Developer's right of architectural control did not automatically transfer to the Association. (ECF No. 37 at 13.)

Rather than acknowledging that, to develop the lots at issue, it needs the approval of the Developer (which presumably is defunct (ECF No. 25, ¶ 19)), Canyon argues that the Developer's authority to exercise architectural control under § 14.13 of the Declaration

4

has expired pursuant to state law.³ (ECF No. 37 at 13.) And although the Developer's authority to exercise architectural control has expired, Canyon contends that the allocation of control to the Developer in the Declaration blocks the Association from now exercising that control. In other words, aside from the handful of restrictions included in the Declaration regarding obstruction of common elements, hazardous uses and waste, awnings, canopies, shutters, antennas, animals, nuisances, impairment of the structural integrity of buildings, laundry, garbage, baby carriages, playpens, bicycles, wagons, business activities, alterations of common elements, parking, occupancy, rentals, exterior lighting, grills, draperies, curtains, screens, and motor vehicles (ECF No. 39-2 at 4-6, § 8.01), there are no limits on what may be built on condominium property. In Canyon's view, if the Association wants to impose limits on what may be built on condominium property, it must amend the Declaration (ECF No. 37 at 14), which requires approval by at least three-fourths of all the owners, notice to all mortgagees, and recording with the county (ECF No. 39-2 at 17, § 14.07).

Canyon accurately notes that courts have often stated that Wisconsin's public policy favors the free use of property. (ECF No. 37 at 11-12 (citing *Pertzsch v. Upper Oconomowoc Lake Ass'n*, 2001 WI App 232, ¶ 17, 248 N.W.2d 829, 635 N.W.2d 829; *Dodge v. Carauna*, 127 Wis. 2d 62, 65, 377 N.W.2d 208, 210 (Ct. App. 1985); *Crowley v. Knapp*, 94

---

³ Canyon and the Association seem to agree that the developer's ability to exercise architectural control expired not later than ten years after the conveyance of the first unit. (ECF Nos. 37 at 13; 45 at 12); *see also* Wis. Stat. § 703.15(2)(c)a.

5

Wis. 2d 421, 434, 288 N.W.2d 815, 822 (1980)).) However, none of the cases it cites for this general principle involved the unique property ownership arrangement of a condominium. "Condominium ownership is a statutory creation that obligates individual owners to relinquish rights they might otherwise enjoy in other types of real property ownership." *Apple Valley Gardens Ass'n v. MacHutta*, 2009 WI 28, ¶17, 316 Wis. 2d 85, 96, 763 N.W.2d 126, 131.

Under Wisconsin's Condominium Ownership Act, "[t]he provisions of any condominium instruments and bylaws filed under [the Act] shall be liberally construed to facilitate the creation and operation of the condominium." Wis. Stat. 703.30(2). Similarly, the Declaration itself states that its provisions "shall be liberally construed to effectuate its purpose of creating a uniform plan for the development and operation of a first class condominium residential development." (ECF No. 39-2 at 17, § 14.10.)

The only construction of the Declaration that is consistent with these provisions is that the Association was permitted to exercise architectural control after the Developer was no longer able to do so. To read the initial, temporary allocation of architectural control to the Developer as a bar to the Association later exercising such authority unless it amended the Declaration is unreasonable and inconsistent with the Declaration's stated purpose of "creating a uniform plan for the development" of the condominium. (*See also* ECF No. 39-1 at 1 (noting that the Declaration is intended "for the purpose of enhancing

6

and protecting the value, desirability, appearance, and aesthetics of the property.").) Architectural control is integral to ensuring uniformity of the development.

The Association's powers were not limited to those specified in the Declaration. The Declaration explicitly authorized the Board to exercise other powers provided by law. (ECF No. 39-1 at 22, § 6.07.) Wisconsin's Condominium Ownership Act provides that an association has the authority, "[s]ubject to any restrictions and limitations specified by the declaration," to "[g]rant or withhold approval of any action by a unit owner or other person which would change the exterior appearance of the unit or of any other portion of the condominium." Wis. Stat. § 703.15(3)(b)7.

The Association chose to exercise this authority through the enactment of rules. Just as Wisconsin law authorizes condominium associations to enact rules, *see* Wis. Stat. § 703.10(1), the Declaration so authorizes the Association (ECF No. 39-1 at 22, § 6.07(e)). And Canyon concedes as much. (ECF No. 49 at 1.) The Act does not state that an association can exercise architectural control only through its bylaws or declaration. By not specifying how such architectural control may be exercised, the implication is that an association may do so through either its declaration, bylaws, or rules.

An association, however, cannot act inconsistently with its bylaws or declaration. Thus, the Association may exercise architectural control through rules only if doing so was within the rulemaking authority granted the Association under the Declaration. Thus, while the expiration of the Developer's authority under § 14.13 empowered the

7

Association to exercise architectural control, this did not necessarily mean that the Association could do so through rules as opposed to through an amendment of the Declaration or Bylaws.

Under the Declaration, the Board had the authority to adopt "such reasonable rules and regulations as it may deem advisable for the maintenance, conservation and beautification of the Property, and for the health, comfort, safety, and general welfare of the Owners and Occupants of said Property." (ECF No. 39-1 at 26, § 6.10(a).) Canyon characterizes this as a limited and narrow grant of authority. But, again, the Declaration expressly states that it is to be liberally construed to effectuate its purpose of creating a uniform plan for the development and operation of the condominium. (ECF No. 39-2 at 17, § 14.10.) Canyon's argument rests on a reading of the Declaration that is not only narrow but unreasonable when the Declaration is read as a whole. Contrary to Canyon's argument, the authorization for the Association to make rules "for the maintenance, conservation and beautification of the Property, and for the health, comfort, safety and general welfare of the Owners and Occupants of said Property" is a broad grant of authority. Control over new construction readily comes within the expansive categories of "maintenance, conservation and beautification" as well as "the health, comfort, safety, and general welfare of the Owners and Occupants of said Property."

Thus, the Association's authority to propound Design Guidelines is founded, not in § 14.13 of the Declaration, but rather in the broad powers granted to the Association

8

under the Declaration and Wisconsin law. Canyon's characterization of the matter as a "transfer" of authority from the Developer to the Association is misplaced. While at one time the Association might have similarly understood its authority as arising from § 14.13 (*see* ECF No. 49 at 8), it was mistaken.

Although the Association cannot take actions inconsistent with the Declaration, the Association's exercise of architectural control once the Developer ceased to be able to exercise control was consistent with the Declaration. When the Developer ceased to have the authority to exercise the power set forth in § 14.13, that section likewise ceased to act as a bar to the Association exercising architectural control. Accordingly, Canyon is not entitled to summary judgment on the basis that the Association lacked the authority to establish the Guidelines.

**4.2. "Individual Grounds"**

Canyon alternatively argues that the Association's authority to exercise architectural control is limited to construction on "Individual Grounds." (ECF No. 37 at 14-15.)

It is unnecessary to delve into the meaning of "Individual Grounds" under the Declaration because Canyon's argument rests on the premise that the Association's authority arises from § 14.13. Having rejected that argument above, this argument fails as well. But, as the Association notes (ECF No. 45 at 12), even if the court were to accept this argument, it would not support Canyon's claim. If § 14.13 gave the Developer

9

authority to control development only of single-family units on "individual grounds," then it never barred the Association from exercising architectural control over the development of multi-family units.

### 4.3. Validity of the Guidelines

Canyon next argues that the Guidelines are void because they were not included in the Declaration or bylaws,[4] and the Association exceeded its authority in enacting them. (ECF No. 37 at 15-19.) Canyon also argues that the limitations contained in the Guidelines are so fundamental that they must be located either in the bylaws or the Declaration. (ECF No. 49 at 1-2.) In its view, given that trivial matters (like where garbage can be stored and a prohibition on drying laundry outdoors) were included in the Declaration, broad limitations on the use and development of property like those contained in the Guidelines likewise must be included in the Declaration.

However, the authority Canyon cites does not support its argument and, as noted above, the Wisconsin's Condominium Ownership Act does not suggest that an association cannot exercise architectural control through rules. Canyon cites two cases from other jurisdictions (ECF No. 37 at 16), but in both of those cases the courts rejected arguments that a condominium association exceeded its authority by passing rules rather than amending a declaration. *See Bd. of Dirs. of 175 E. Del. Place Homeowners Ass'n v.*

---

[4] The bylaws were included in the Declaration as Articles VI, VII, and VIII and are not a separate document. (ECF Nos. 39-1 at 20, § 6.01; 49 at 1, fn. 1.)

10

*Hinojosa*, 287 Ill. App. 3d 886, 888, 223 Ill. Dec. 222, 223, 679 N.E.2d 407, 408 (1997) (rejecting challenge to condominium board's rule prohibiting dogs); *Beachwood Villas Condo. v. Poor*, 448 So. 2d 1143, 1145 (Fla. Dist. Ct. App. 1984) (rejecting argument that board exceeded its authority by passing rules that restricted rental of units).

In *Apple Valley Gardens Ass'n v. MacHutta*, 2009 WI 28, 316 Wis. 2d 85, 763 N.W.2d 126, the Wisconsin Supreme Court held that an association may restrict rentals of units by amendment of its bylaws, and the restriction need not be included in a declaration. *Id.*, ¶ 13. While *Apple Valley* strongly supports the conclusion that architectural review restrictions need not be set forth in a declaration, it does not hold that such restrictions must be in bylaws to the exclusion of rules. Although a guide to the drafting of condominium documents supports the view that "fundamental" restrictions should be included in a declaration, *see Apple Valley Gardens*, 2009 WI 28, ¶36 (Prosser, J., dissenting) (quoting Jesse S. Ishikawa & Brian W. Mullins, *Drafter's Guide to Wisconsin Condominium Documents* § 3.66 (2d ed. 2007)), Canyon has not identified any controlling authority supporting that view.

Canyon also argues that use limitations must be included in a declaration because only a declaration is recorded, and recording serves to provide notice to prospective purchasers. "[A]n owner should only take title to that property subject to use restrictions of which he has notice. Use restrictions contained in rules and regulations, which are not

11

recorded, fail to provide such notice to property owners and prospective purchasers." (ECF No. 37 at 17.)

This argument, however, overlooks the disclosure requirements of the Wisconsin Condominium Ownership Act. "Not later than 15 days prior to the closing of the sale of a unit to a member of the public, the seller shall furnish to the purchaser … [c]opies of the proposed or existing declaration, the bylaws, and any rules or regulations." Wis. Stat. § 703.33(1)(a). Within five days of receiving these documents, a prospective purchaser has the right to rescind an offer. Wis. Stat. § 703.33(4)(a). Thus, every prospective purchaser will be informed of any rules governing the use of a unit.

In sum, Canyon has failed to show that the Association was required to exercise its power of architectural review through the Declaration or bylaws as opposed to rules. Finding no basis to conclude that the Guidelines were an improper exercise of the Board's rulemaking authority, Canyon is not entitled to summary judgment on this basis.

**4.4. Application of the Guidelines to Multi-Family Units**

Canyon argues that, even if the Guidelines were properly enacted, they apply only to the construction or remodeling of single-family homes. (ECF No. 37 at 19.)

There were three iterations of the Guidelines enacted: in 1997 (ECF No. 39-13), in 2006 (ECF No. 39-16), and in 2012 (ECF No. 39-18). It is unclear if successive iterations supplanted or merely amended prior versions. In other words, it is unclear if the 2012 Guidelines are the only Guidelines currently in force or if all the Guidelines together limit

12

the development of units. Based on the text of the Guidelines and a review of the minutes adopting them (ECF Nos. 39-14, 39-15, and 39-17), the court understands that only the 2012 Guidelines are currently in force. This understanding is consistent with the parties' arguments. And, in any event, the distinction does not appear material to the question presently before the court.

The 2012 Guidelines are entitled, "SOMERSET DESIGN REVIEW GUIDELINES For Single Family Homes and Lake Front Condominium Remodeling and New Construction." (ECF No. 39-18 at 1.) In arguing that the Guidelines apply to multi-family buildings as well as single family homes, the Association notes that the title explicitly refers to "new construction." (ECF No. 45 at 14.) However, "new construction" is clearly modified by "single family homes" and a "lake front condominium." Canyon's proposed development includes neither "single family homes" nor a "lake front condominium"[5] but rather consist of multi-family buildings.

Nonetheless, the Association argues that it would be inappropriate to read the title as limiting the scope of the Guidelines when, read as a whole, the Guidelines are clear that they apply to all construction. (ECF No. 45 at 15 (quoting *Manitowoc Co. v. Lanning*, 2018 WI 6, ¶72, n. 4, 379 Wis. 2d 189, 906 N.W.2d 130).) *Lanning*, however, involved the interpretation of a statute; the court here is assessing the meaning not of a statute but a

---

[5] The term "lake front condominium" is not defined but no one argues that the units Canyon seeks to develop fall within this term. According to the survey maps, none of the lots abuts water. (*See* ECF Nos. 39-3 at 7; 39-5 at 15.)

13

condominium association's rules. But even if the court found *Lanning* persuasive, the Association's argument would be helpful only if the Guidelines really do demonstrate their applicability to multi-family buildings.

In an effort to show that the Guidelines by their "plain and unambiguous terms" (ECF No. 45 at 15) apply to multi-family buildings, the Association notes that, under the heading "DESIGN REVIEW COMMITTEE," the Guidelines state, "A Design Review Committee ('Committee') has been established to conduct a thorough review of designs for any and all construction remodeling and additional landscaping in Somerset, and to enforce the Guidelines to uphold the ideals and values of the community, and to ultimately approve or disapprove each design." (ECF No. 39-18 at 3.)

That provision, at best, states only that a committee exists to "review designs for any and all construction remodeling and additional landscaping in Somerset." In other words, the statement outlines the scope of the work of the Committee, not the scope of the Guidelines. Read in connection with the rest of the Guidelines, the implication is that the Guidelines govern the Committee's work with respect to single family residences and some other authority controls the Committee's review of other construction.

Moreover, the sentence does not even establish that the Committee can review all new construction. The absence of commas in the statement indicates that there are only two categories subject to committee review: "construction remodeling" and "additional landscaping." If "construction" was intended as a third category rather than merely an

14

adjective modifying "remodeling," the phrase would have been written as, "A Design Review Committee ('Committee') has been established to conduct a thorough review of designs for any and all construction[,] remodeling[,] and additional landscaping in Somerset …." Canyon's proposed development could not be characterized as "construction remodeling."

The only materially unambiguous statement regarding the scope of the Guidelines is found in the very first line of the Guidelines. In the original, 1997 version, the Guidelines stated, "These Design Guidelines have been established to provide property owners, their architects, builders, landscape architects and contractors with the proper direction for the planning and construction [of] a single-family residence in keeping with the Somerset design concept." (ECF No. 39-18 at 2.) This identical phrase appeared in both of the subsequent versions of the Guidelines except that in the 2012 Guidelines the word "construction" was replaced with "remodeling," so the phrase read, "These Design Guidelines have been established to provide property owners, their architects, builders, landscape architects and contractors with the proper direction for the planning and remodeling of a single family residence in keeping with the Somerset design concept." (ECF No. 39-13 at 2 (emphasis added).)

Nothing in the Guidelines suggests that they apply to the construction of multi-family buildings, much less does so in a manner sufficient to overcome this unambiguous statement that the Guidelines are limited to single-family residences. Because the

15

Guidelines clearly state that they apply only to single-family homes, they are inapplicable to Canyon's plan to develop multi-family buildings on lots within the condominium designated for that purpose.

### 4.5. Laches and Estoppel

Finally, the Association argues that laches and estoppel bar Canyon's claims. (ECF No. 45 at 15-18.) Setting aside questions of whether Canyon can accurately be characterized as standing in the shoes of the current owners of the properties for purposes of these equitable doctrines, the defenses are inapplicable. As discussed above, the Association never established any rule requiring construction of multi-family buildings to be subject to architectural review. With no rules to challenge (and no imminent plans to develop the units), there was no reason for the owner of the units to seek declaratory relief earlier.

### 5. Conclusion

Therefore, the court will grant Canyon's motion for summary judgment. Canyon is entitled to a declaration "that the 2012 Design Guidelines are inapplicable to multiple-family structures." (ECF No. 36 at 2.)

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for summary judgment (ECF No. 36) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk shall schedule a telephonic conference to discuss any further proceedings.

Dated at Milwaukee, Wisconsin this 31st day of January, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge